### CARTER et al. v. McCASLAND.

No. 21384. Opinion Filed Feb. 21, 1933.

Bond & Bond, for plaintiffs in error.

Womack, Brown & Cund, for defendant in error.

BAYLESS, J. T. H. McCasland instituted an action in the district court against G. W. Carter, M. L. Cline, and S. C. Carver for the possession of certain real estate and damages for the wrongful detention of said land from him. This real estate was a part of the surplus allotment of Storden Noah, a full-blood Choctaw Indian, now deceased, and the title of McCasland is based upon deeds from his heirs. The parties will be referred to herein as they appeared in the trial court. The defendants contend that they are the tenants of Noah by reason of the execution of certain rental contracts alleged in their answer, and the plaintiff contends that said leases are void.

The record discloses that five agricultural leases were executed by Storden Noah to various parties. The leases are as follows: (1) A lease executed to S. C. Lynch for a term of five years dated December 16, 1922; (2) a lease executed March 15, 1923, to G. W. Carter for a term of five years; (3) a lease executed December 8, 1924, to the defendant G. W. Carter for a term of five years; (4) a lease executed on the 11th day of December, 1925, to W. M. Bonner; (5) a lease executed on the 24th day of December, 1925, to G. W. Carter. All of the foregoing leases were executed by the allottee, Storden Noah. Carter testified that he was in possession of the land in 1926, and that he had been in possession of the land ten years prior thereto. He also testified that he had purchased the Bonner lease as well as the Lynch lease. The record discloses that Carter sought to release the first two leases referred to on the 20th day of November, 1924, the same day that the third lease was executed; and, on the 5th day of April, 1926, defendant Carter filed a release of the third lease, which release was dated the 11th day of December, 1925. An examination of the record discloses that the defendant Carter did not file any releases of the old leases held by him until the new lease, which he had secured, was filed for record, except that he filed for record the release for the third lease one hour before he filed the fifth lease, but the fourth lease was still unreleased at this date. Thus, the record shows that there was never a time during all of this period when this land was not incumbered by a lease.

The defendants contend that they would be entitled to hold under the fourth or fifth lease, inasmuch as the previous leases had been released by them.

That portion of the Act of Congress of May 27, 1908, here involved (sec. 2 [35 Stat. L. 312]), reads:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee, if an adult, or by guardian or curator under order of the proper probate court, if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal."

In the case of United States v. Noble, 237 U. S. 74, 35 Sup. Ct. Rep. 532, 59 L. Ed. 844, where that court had under consideration a series of leases for mineral purposes, wherein the act of Congress provided in substance that mineral leases could be executed for a period of time not exceeding 10 years, the above-named court condemned the conduct of the parties to this series of leases when it said:

"The lease here in controversy was made on March 25, 1905, for ten years from date (paragraph 3). The property was already subject to a lease concededly valid, for ten years from January 11, 1902. The lease under which the appellee claims is what is known as an 'overlapping lease.' It is not necessary to describe transactions of this character, for they are abundantly illustrated in the record which shows that this allottee made six leases of the same rights in less than five years, each for ten years from date, with the exception of the last, which was for 20 years, and all reserving substantially the same rents and royalties which were reserved in the first lease at a time when the property had not been prospected. The practice, to say the least, is an abnormal one, and it requires no extended discussion to show that it would facilitate abuses in dealing with ignorant and inexperienced Indians."

This court in the case of Chenoweth et al. v. Deavers et al., 119 Okla. 74, 247 P. 982, in the second paragraph of the syllabus, states:

"Primarily, the purpose and intent of this limitation on the right of contract are to

protect the Indians against improvident contracts rendered so by postponed possession, depreciated values of postponed terms and absence of competition for leases not followed by reasonably early possession"

—and in the body of the opinion says further:

"Without going into a discussion of the numerous cases in which this court has considered the foregoing provisions of the Act of Congress of May 27, 1908, it is sufficient here to say in answer to plaintiff's contention, above stated, that the holdings of this court do not appear to be based primarily upon the period of time covered by the two leases where the latter one is claimed to be an overlapping lease, but are based rather upon the right of the parties to contract with reference to the lands at a time when the lessor is excluded from possession by a valid and subsisting lease, where it is not made to appear that the second contract is made near the termination of the first contract."

This proposition being the only controverted matter, we therefore conclude that the trial court did not commit error, and the judgment of said court is therefore affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, OSBORN, and BUSBY, JJ., concur. ANDREWS, McNEILL, and WELCH, JJ., absent.